**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
In re:                        :
                              :    Bankruptcy No. 04-10510 (RTL)
RAVI SUBRAMANIAN, et al.,     :    Adv. Proc. No. 04-2685 (RTL)
                              :
     Debtors.                 :
                              :
_____:
                              :
RAVI SUBRAMANIAN, et al.,     :
                              :    CIVIL ACTION NO. 05-5098 (MLC)
     Appellants,              :
                              :
     v.                       :    **MEMORANDUM OPINION**
                              :
BARRY W. FROST, et al.,       :
                              :
     Appellees.               :
_____:
```

Ravi Subramanian ("Mr. Subramanian") and Rajalakshmi
Subramanian ("Mrs. Subramanian") (collectively, "the appellants")
appeal from an order of the United States Bankruptcy Court
("Bankruptcy Court"), entered on September 13, 2005, denying
their motion for relief, pursuant to Federal Rule of Civil
Procedure ("Rule") 60(b) (the "Rule 60(b) Order").  (Bankr. Adv.
Proc. 04-2685, dkt. entry no. 31.)  The appellants moved for Rule
60(b) relief from an order entered by the Bankruptcy Court on
January 11, 2005, (1) granting judgment in favor of the
appellees, Barry W. Frost ("Frost"), Chapter 7 Trustee, and HSBC
Bank USA, as successor by merger to HSBC Bank USA, for itself and
as collateral agent for Bank of Baroda ("HSBC Bank")

1

(collectively, "the appellees"), and (2) preventing the appellants from obtaining a discharge pursuant to 11 U.S.C. §§ 727(a)(6)(A) and 727(a)(3) (the "January 2005 Order").  (Id.) For the reasons stated herein, the Court affirms the Rule 60(b) Order.

## BACKGROUND

The appellants filed a voluntary chapter 7 bankruptcy petition with the Bankruptcy Court on January 6, 2004.  (Bankr. No. 04-10510, dkt. entry no. 1.)[1]  The Bankruptcy Court appointed Frost as the chapter 7 trustee on January 8, 2004.  (Id., dkt. entry no. 3.)

Frost and HSBC Bank filed a complaint on September 30, 2004, seeking to deny (1) the appellants' discharge pursuant to 11 U.S.C. § ("Section") 727, and (2) the discharge of Ravi Subramanian's debt to HSBC Bank pursuant to 11 U.S.C. § 523. (Bankr. Adv. Proc. No. 04-2685, dkt. entry no. 1, Compl., at 2, 54.)[2]  The Bankruptcy Court issued a summons and notice of

---

[1] This was the appellants' second petition for relief; they filed their first petition under chapter 7 on October 28, 2003. (See Bankr. No. 03-45442 (RTL), dkt. entry no. 1.)  The Bankruptcy Court dismissed the petition on November 18, 2003, for the appellants' failure to file missing documents.  (Id., dkt. entry no. 16.)

[2] HSBC Bank is a creditor of Ravi Subramanian pursuant to a judgment — in the amount of $18,000,000 — entered on November 27, 2003, in the Southern District of New York.  (Compl., at ¶¶ 1, 12, & Ex. B.)  All references to docket entries in this section, unless otherwise noted, refer to entries on the Bankruptcy Court's docket in Bankr. Adv. Proc. No. 04-2685.

pretrial conference, which the appellees sent to the appellants and their counsel, Arthur Swidler, Esquire ("Swidler") on October 1, 2004.  (Dkt. entry nos. 2, 11.)[3]  The summons indicated that the appellants' deadline for filing an answer to the complaint was November 1, 2004.  (Dkt. entry no. 2).[4]

The appellants failed to file an answer by November 1, 2004. As such, the appellees moved for entry of default, pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7055, on November 3, 2004.  (Dkt. entry no. 13.)  Approximately 50 minutes after the appellees' motion was entered on the docket, Swidler hand-delivered the appellants' untimely answer.  (See dkt. entry no. 16 (time-stamping answer at 11:37 a.m.); dkt. entry no. 13 (Clerk's notations indicating request for entry of default filed on 11-3-04 and entered on 11-3-04 at 10:48 a.m.).)[5]  The Clerk of

---

[3] The Summons provided: "IF YOU FAIL TO RESPOND TO THE SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT." (Dkt. entry no. 2.)

[4] The appellees were advised of a new address in India for the appellants' mail, and appellees served the complaint and summons upon the appellants via Federal Express international priority mail on October 8, 2004.  (Dkt. entry no. 12.)

[5] At the time Swidler filed the answer, and continuing throughout his involvement in the case, Swidler was not a CM/ECF participant for electronic filing.  (Dkt. entry no. 17, 11-3-04 Swidler Cert. of Non-Compliance; dkt. entry no. 22, 1-21-05 Swidler Cert. of Non-Compliance.)  Swidler claims that the appellees rejected his request to file the answer out of time. (Dkt. entry no. 21, 1-21-05 Swidler Cert.  ("1-21-05 Swidler Cert."), at ¶ 5.)  Swidler, regardless of whether the appellees

the Bankruptcy Court entered default against the appellants on November 4, 2004.  (Dkt. entry no. 14.)

After receiving notice of the entry of default, Swidler requested that the appellees consent to vacating the default. (Dkt. entry no. 23; 2-22-05 Frost Cert. ("2-22-05 Frost Cert."), at ¶ 8 & Ex. D.).  Frost denied Swidler's request because "he could not substantiate any meritorious defenses to the claims of non-dischargeability set forth in the Complaint."  (Id. at ¶ 8; see also dkt. entry no. 29, HSBC's Br. in Opp. to Mot. to Vacate Default and Default J. ("HSBC's Rule 60 Br."), at ¶ 12 (claiming denial of request because (1) Swidler did not offer any excuse for failing to timely answer the complaint, (2) the answer consisted of only general denials, (3) the answer "was nothing more than an attempt to delay the inevitable," and (4) the answer did not show any meritorious defenses to the claims in the complaint).)  Swidler failed to move to vacate the entry of default.

The appellees moved for entry of default judgment or, in the alternative, for summary judgment against the appellants on December 6, 2004.  (Dkt. entry no. 18.)  Specifically, the appellees claimed that the Bankruptcy Court should (1) enter a

---

consented to an extension to file the answer, could have requested that the Bankruptcy Court extend the time to file the answer if he (1) made the request before November 1, 2004, and (2) could show "good cause" for the extension.  Fed.R.Bankr.P. 9006(b)(1).  However, Swidler made no such request to the Bankruptcy Court.

default judgment for the appellants' failure to timely file an
answer, and (2) grant summary judgment because the appellants
allegedly failed to comply with an order of the Bankruptcy Court
regarding the turnover of a 1999 BMW.  (Id., Appellees' Br. in
Support of Mot. for Default J. ("Default Judg. Br."), at 2-3.)
Frost served copies of the motion — via regular mail — to Swidler
and the appellees at their New Jersey and India addresses.  (Dkt.
entry no. 18, 12-6-06 Frost Proof of Mailing, at ¶ 3.)  The
appellants failed to oppose the motion and on January 11, 2005,
the Bankruptcy Court (1) granted judgment in favor of the
appellees against the appellants, and (2) barred the appellants
from receiving a discharge pursuant to Sections 727(a)(6)(A) and
727(a)(3).  (Dkt. entry no. 19.)

    The appellants moved to vacate the default judgment on
January 27, 2005, and included with the motion a certification
from Swidler.  (Dkt. entry no. 21; 1-21-05 Swidler Cert.)  In the
certification, Swidler asserted that he did not file any
opposition to the motion for default judgment or appear before
the Bankruptcy Court on the return date because he did not
receive a copy of the motion.  (1-21-05 Swidler Cert., at ¶ 2.)
Swidler also did not dispute that Frost sent him a copy of the
moving papers, but suggested that he did not receive a copy of
the mailed motion and, therefore, did not oppose the motion,
because he shared office space with another attorney and a bail

bond company.  (Id.)  Moreover, Swidler could not receive
electronic notice of the motion because he was not a CM/ECF
participant.  (Dkt entry nos. 17 & 22.)  The Bankruptcy Court —
after a hearing on March 7, 2005 — rendered an oral decision (1)
denying without prejudice the motion to vacate the default
judgment, and (2) relieving Swidler as counsel for the appellants
sua sponte.  (Unnumbered dkt. entry btw. nos. 23 & 24.)[6]  The
appellants retained new counsel and, on May 24, 2005, moved again
to vacate the entry of default and default judgment.  (Dkt. entry
no. 26.)

The appellants moved to vacate pursuant to Rules 60(b)(1)
and 60(b)(6).[7]  Regarding the Rule 60(b)(1) claim, the appellants
argued that they were entitled to relief because of "excusable
neglect."  (Appellants' 5-24-05 Br. in Support of Mot. for Rule
60(b) Relief ("Appellants' Rule 60(b) Br."), at 7.)  The
appellants noted that the answer was filed only two days late,
and that, in preparing the answer, Swidler had to (1) respond to
199 paragraphs of allegations, which totaled approximately 500
pages in length with exhibits, and (2) communicate with the

---

[6] The Bankruptcy Court entered a formal written order on
April 13, 2005.  (Dkt. entry no. 24.)  The Bankruptcy Court
provided no written explanation for relieving Swidler as counsel
for the appellants.

[7] The appellants included a certification from Ravi
Subramanian ("Subramanian Cert.") in support of their motion.
(Id.)

appellants who were living in India.  (Id. at 5-6.)  The
appellants also argued that (1) the appellees would not suffer
any prejudice if the Bankruptcy Court vacated the default
judgment, (2) they asserted meritorious defenses in (a) Mr.
Subramanian's certification, and (b) their explanation of
Swidler's misconduct, and (3) they were not culpable for the
default judgment.  (Id. at 7-13.)[8]  The appellants, concerning
the Rule 60(b)(6) argument, contended that exceptional
circumstances existed to warrant relief.  (Id. at 14.)  The
appellants claimed that Swidler was grossly negligent in handling
the case, and that they would face an undue hardship if the
Bankruptcy Court denied the motion.  (Id. at 14.)

The appellees opposed the motion, arguing that, inter alia,
the appellants (1) did not take reasonably prompt action to file
the motion, (2) did not explain why Swidler's conduct amounted to
"excusable neglect," (3) were culpable in the misconduct, and (4)
failed to assert meritorious defenses to the allegations in the
complaint.  (Dkt. entry no. 28, Frost's Letter Br. in Opp. to
Mot. for Relief from J. ("Frost's Rule 60(b) Br."); HSBC Bank's
Rule 60(b) Br.)  The Bankruptcy Court — after a hearing on June

---

[8] The appellants pointed out that although, inter alia,
Swidler — through his certification in support of the appellants'
first motion to vacate — attempted to (1) explain the reasons for
the delay in filing the answer, and (2) respond to the appellees'
grounds to deny discharge, he did not support the motion with a
memorandum of law or offer a meritorious defense to the
allegations in the complaint.  (1-21-05 Swidler Cert., at ¶¶ 4-7;
Subramanian Cert., at ¶ 18.)

20, 2005 — issued a written opinion and order on September 13, 2005, denying the appellants' motion for relief.  (Dkt. entry no. 31.)

The Bankruptcy Court concluded that the appellants could not seek relief under Rule 60(b)(6) because the court found that "they received notice of the proceedings and filing dates separate and apart from the notices received by their attorney and therefore are not blameless for the late filing."  (Rule 60(b) Order, at 6.)  In addition, the Bankruptcy Court determined that the appellants could not obtain relief pursuant to Rule 60(b)(1) because they failed to establish a meritorious defense to each count in the complaint.  (Id. at 9.)  Specifically, the Bankruptcy Court found that the appellants failed to answer — in whole or in part — the allegations in nine separate counts in the complaint.  (Id. at 9-11.)  As such, the Bankruptcy Court concluded that the appellants' "failure to respond to these allegations have the effect of causing the allegations to be confessed against [them].  [Therefore, they] would not be able to receive a discharge."  (Id. at 11.)[9]  The appellants filed a

---

[9] The Bankruptcy Court, after concluding that the appellants failed to "satisfy the threshold requirement of setting forth a meritorious defense," did not address whether (1) the appellees would be prejudiced by vacating the default, or (2) the appellants' culpable conduct contributed to the default.  (Id. at 11.)  Because the Bankruptcy Court did not address (1) the possible prejudice to the appellees, or (2) the potential culpable conduct of the appellants, the Court will not address those issues here.

timely notice of appeal from the Rule 60(b) Order on September
22, 2005.  (Dkt. entry no. 34.)

## DISCUSSION

### I.  Jurisdiction and Standard of Review

A district court has appellate jurisdiction over a
bankruptcy court's final judgments, orders, and decrees.  28
U.S.C. § 158(a).  A district court reviews a bankruptcy court's
"legal determination de novo, its factual findings for clear
error[,] and its exercise of discretion for an abuse thereof."
In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000); see Fed.R.Bankr.P.
8013 ("On appeal the district court . . . may affirm, modify, or
reverse a bankruptcy judge's judgment, order, or decree or remand
with instructions for further proceedings.  Findings of fact,
whether based on oral or documentary evidence, shall not be set
aside unless clearly erroneous.")  Also, the Court, when
addressing mixed questions of law and fact, divides the questions
into their respective components and applies the appropriate
standard to each.   In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

### II.  Analysis

The appellants contend that the Bankruptcy Court erred in
denying their Rule 60(b) motion because the court (1) "held that
[they] had not demonstrated a meritorious defense as required by
a Rule [60](b)(1) motion and denied the motion on that basis,"
and (2) "rul[ed] that the court was precluded from considering

9

[their] arguments under Rule [60](b)(6)."  (Appellants Br., at 12.)  The appellees argue in opposition that the Bankruptcy Court properly denied the motion for relief under Rule 60(b)(1) because the appellants failed to show a meritorious defense to each claim in the complaint.  (Frost Br., at 6; HSBC Br., at 8.)  Also, the appellees assert that the appellants' asserted defenses are not meritorious.  (Frost Br., at 6; HSBC Br., at 8.)  The appellees further claim that the Bankruptcy Court correctly precluded the appellants from seeking relief pursuant to Rule 60(b)(6) because they asserted grounds for relief covered by Rule 60(b)(1). (Frost Br., at 6; HSBC Br. at 8.)

**A.   Rule 60(b)**

Rule 60(b) allows a party to seek relief from a final judgment or order if the party shows "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . .; (4) the judgment is void; (5) . . . it is no longer equitable that the judgement should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."[10]  Id.  A party seeking relief under Rule 60(b) must move "within a reasonable time, and for reasons (1), (2), and (3) [above] not more than one year after the judgment, order, or proceeding was entered or taken."  Id.  The

_____

[10] Bankruptcy Rule 9024 provides that Rule 60 applies in cases under the Bankruptcy Code seeking relief from a judgment or order, except in limited circumstances, none of which apply here. Id.

Court, in considering an appeal from an order denying a Rule 60(b) motion, reviews only the denial of the motion, not the merits of the underlying judgment.  Erie v. County of Crawford, No. 05-3010, 2006 WL 83400, at *1 (3d Cir. Jan. 13, 2006); see Browder v. Dir., Dep't of Corr., 434 U.S. 257, 263 n.7 (1978) (explaining that "an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review").  A bankruptcy court's decision to grant or deny a Rule 60(b) motion may be reversed only for an abuse of discretion.  Page v. Schweiker, 786 F.2d 150, 152 (3d Cir. 1986).

## B.  Appellants' Rule 60(b)(1) Motion

The appellants contend that the Bankruptcy Court erred in determining that they were not entitled to relief under Rule 60(b)(1) for excusable neglect.  (Appellants Br., at 12.)  The appellants argue that (1) the appellees would not suffer any prejudice if the Bankruptcy Court vacated the default judgment, (2) they asserted meritorious defenses to the complaint, and (3) they were not culpable in causing the default.  (Id. at 13-21.) The appellees claim that the Bankruptcy Court correctly determined that the appellants had not shown a meritorious defense because they failed to properly respond to each allegation in the complaint.  (Frost Br., at 13-15; HSBC Br., at 15-19.)  The appellees further argue that (1) the alleged defenses were not meritorious, (2) the appellants failed to

11

timely file the motion to vacate, (3) the appellants provided no excuse for the claimed neglect, (4) the appellants' culpable conduct contributed to the alleged excusable neglect, and (5) the appellees would have been prejudiced if the Bankruptcy Court vacated the default judgment.  (Frost Br., at 16-25; HSBC Br., at 19-31.)

      1.   Vacating Default Judgments Under Rule 60(b)(1)

Rule 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Id.; see In re Massaro, 235 B.R. 757, 761 (Bankr. D.N.J. 1999) (explaining that Rule 60(b) controls in cases where both an entry of a default and a default judgment exist).[11] Pursuant to Rule 60(b)(1), the Court "may relieve a party . . . from a final judgment" for "mistake, inadvertence, surprise, or excusable neglect."  Id.  Default judgments are disfavored and any doubt as to whether a default judgment should be vacated must be resolved in favor of setting aside the default and reaching a decision on the merits.  Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987).

      2.   Timeliness of the Appellee's Motion

The appellees argue that the appellants failed to "promptly file [their] motion [to vacate]."  (Frost Br., at 22; HSBC Bank Br., at 25.)  Rule 60(b) provides that a motion to vacate a

---

[11] Bankruptcy Rule 7055 incorporates Rule 55(c).  Id.

default judgment because of excusable neglect "shall be made within a reasonable time, and . . . not more than one year after the judgment, order, or proceeding was entered or taken."  Id.

The Bankruptcy Court entered default judgment against the appellants on January 11, 2005.  (Bankruptcy No. 04-10510, dkt. entry no. 19.)  The appellants filed their first motion to vacate the default — with Swidler acting as counsel — on January 27, 2005, just 16 days after the Bankruptcy Court entered default judgment.  (Id., dkt. entry no. 21.)  The Bankruptcy Court denied the first motion to vacate on March 7, 2005, but did not sign or enter a written order until April 13, 2005.  (Id., unnumbered dkt. entry btw. nos. 23 & 24; dkt. entry no. 24.)  The appellants retained current counsel and filed a motion for relief on May 24, 2005.

The appellees have not cited any case law or provided any support for their assertion that a 16-day period between the entry of default judgment and the filing of the motion to vacate is an unreasonable delay.  Also, the appellees misconstrue the applicable time periods for computation.  Frost discusses the time between entry of default and the first motion to vacate, and HSBC Bank points to the time between the Bankruptcy Court's oral decision denying the first motion to vacate and when new counsel filed the subsequent motion for relief.  After the appellants were informed that Swidler was relieved as their counsel, they

acted promptly in retaining new counsel and in filing the motion
for relief.  Therefore, the appellees' arguments that the
appellants failed to "promptly" move to vacate the default
judgment are without merit.

      3.   Meritorious Defense

     A defendant does not possess an automatic right to have a
default judgment vacated upon alleging a defense.  Harad v. Aetna
Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988).  Instead, the
defendant must assert specific facts supporting a meritorious
defense.  See $55,518.05 in U.S. Currency, 728 F.2d at 195
(explaining that defendant's answer must allege specific facts
beyond "mere denials" or "conclusory statements").  A defendant
demonstrates a meritorious defense when the "allegations of [the]
defendant's answer, if established at trial, would constitute a
complete defense to the action.'"  Id. (citations omitted);  see
Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir.1987)
(explaining that Rule 55 does not require defaulting party "to
prove beyond a shadow of a doubt that [the party] will win at
trial, but merely to show that [the party has] a defense to the
action which at least has merit on its face").  The issue of
whether a defendant has shown a meritorious defense is the
"threshold question" for the Court to determine in considering a
motion to vacate a default judgment.  Resol. Trust Corp. v.
Forrest Grove, Inc., 33 F.3d 284, 288 (3d Cir. 1994) (citation

omitted); <u>see</u> <u>NuMed Rehab., Inc. v. TNS Nursing Homes</u>, 187 F.R.D. 222, 225 (E.D. Pa. 1999) ("Because the existence of a meritorious defense is a threshold question, the absence of such is necessarily fatal to the Rule 60(b) motion.").

The Bankruptcy Court found that the appellants had failed to answer, in whole or in part, counts "5, 7, 12, 13, 16, 22, 23, 23 (sic), and 26" of the complaint.  (Rule 60(b) Ord., at 9.)  The Court, to determine whether the Bankruptcy Court erred in finding that the appellants failed to answer the aforementioned counts, examines each count and the responses thereto, or lack thereof, by the appellants.

    a.   The Complaint

        (1)  Count V

The appellees contend in Count V that "Mr. Subramanian failed to satisfactorily explain the loss of $20,000.00." (Compl., at ¶ 33.)  In support, the appellees attached to the complaint a copy of a personal financial statement that the appellees submitted to the Bank of India (the "Bank of India PFS") on September 20, 2002.  (<u>Id.</u> at Ex. F.)  The Bank of India PFS includes a category for "Cash in this Bank (including money market accounts, CD's)."  (<u>Id.</u>)  The appellants listed $145,000 in this category.  (<u>Id.</u> at ¶ 33.)

At Mr. Subramanian's Bankruptcy Rule 2004 deposition ("Rule 2004 Deposition") on February 3, 2004, he testified that of the $145,000 listed, $125,000 was in a CD and $20,000 was in cash.

(Id. at Ex. H, 7-23-04 Transcr. Vol. II of Mr. Subramanian's Rule 2004 Dep. ("Vol. II"), at 27-29.)  Mr. Subramanian stated that he and his wife had spent the $20,000, but he was not sure if he had records for the expenditures.  (Vol. II, at 29.)  Mr. Subramanian agreed with a request to look for any records as to how they spent the $20,000.  (Id.)  The appellees claimed that Mr. Subramanian failed to provide a "satisfactory" explanation for how he and his wife spent the $20,000, or produce any records to the appellees.  (Compl., at ¶ 33.)

(2)  Count VII

The appellees alleged in Count VII that the appellants "knowingly and fraudulently lied" about Mrs. Subramanian's alleged employment at eComServer, Inc. ("eCom"), and Mr. Subramanian's relationship and knowledge of eCom.  (Compl., at ¶ 37.)  Mrs. Subramanian, at the Rule 341 Meeting, stated that she started working at eCom in November 2003 at a salary of approximately $4,000 a month.  (Compl., at ¶ 38 & Ex. G, 2-3-04 Transcr. of Rule 341 Meeting ("Rule 341 Meeting Transcr."), at 23-24, 38.)  She also stated that (1) she was "an artist by profession," (2) eCom employed her as an artist to work in its art center, and (3) she provided eCom with 12 pieces of art work that were currently on display at eCom.  (Rule 341 Meeting Transcr., at 38-39, 122-23; see id. at 24 (stating that she worked at eCom as a "consultant").)  However, Mr. Subramanian, at

16

his Rule 2004 Deposition, testified that Mrs. Subramanian was an "admin[istrative] assistant" at eCom.  (Compl., at ¶ 38; Vol. II, at 57; 7-20-04 Transcr. of Vol. I. of Mr. Subramanian's Rule 2004 Dep. ("Vol. I"), at 101.)  Also, the appellants' daughter, Rati Subramanian, testified in a deposition that she believed that her mother did not paint for eCom.  (Compl., at ¶ 38 & Ex. J., 6-10-04 Transcr. of Rati Subramanian Dep., at 28-29.)  The appellees also found checks — a check for $5,000 in September 2003 and checks totaling $5,500 in January 2004 — indicating that Mrs. Subramanian received more than $4,000 per month while working at eCom.  (Compl., at ¶ 40 & Ex. L.)

Mr. Subramanian, at the Rule 341 Meeting, also stated, _inter alia_, that (1) he did not know anything about the ownership of eCom or know any officers of the company, (2) eCom was a client of Silver Line Technologies ("SLT"), and (3) there was no relationship between Silver Line Technologies, Limited ("STL"), and eCom.  (Compl., at ¶ 39; Rule 341 Meeting Transcr., at 42-45, 126-27.)  However, at Mr. Subramanian's Rule 2004 Deposition, he testified, _inter alia_, that (1) STL — a company of which he is chairman — wholly-owned eCom (as a subsidiary); (2) he knew the name of the president of eCom; (3) STL acquired eCom through a stock purchase in 2002; (4) eCom stopped doing business in March 2004; (5) STL assigned eCom's contract to another company; and (6) he worked out of the eCom facility and sat in its office in

17

Somerset, New Jersey.  (Compl., at ¶ 39; Vol. I., at 47-49, 54,
96-103, 149-51, 153-54, and 173-74; Vol. II, at 9-20.)  Further,
the appellees attached to the complaint copies of signature forms
and certifications signed by Mr. Subramanian indicating that he
had identified himself as "Chairman" of eCom.  (Compl., at ¶ 39 &
Ex. K.)

    The appellees alleged that the appellants "knowingly and
fraudulently lied" under oath at the Rule 341 Meeting about only
holding one life insurance policy.  (Id. at ¶ 54.)  At the Rule
341 Meeting, Mr. Subramanian stated that he and his wife had one
insurance policy with El Credit that was canceled after they
defaulted on payments.  (Rule 341 Meeting Transcr., at 89-91.)[12]
He also indicated that this was the only policy that had ever
existed on his life.  (Id. at 91.)  Mrs. Subramanian also stated
that there were no life insurance policies on her life, and that
there were none that existed in the past.  (Id. at 91-92.)

    The Bank of India PFS indicated that Mr. Subramanian had a
life insurance policy through a company named Equitable for
$250,000.  (Compl., at ¶ 54 & Bank of India PFS, at 3.)  Mrs.
Subramanian was the beneficiary of that policy.  (Id.)[13]

---

    [12] The appellants also agreed to provide documentation
concerning the cancellation of the policy and their default.
(Rule 341 Meeting Transcr., at 91.)  However, the appellees claim
that they did not receive any documents about the policy from the
appellants.  (Compl., at ¶ 55-56.)

    [13] Although the appellees did not allege this in the
complaint, the appellants attached an additional sheet to the

18

(3)   Count XIII

The appellees assert in Count XIII that Mr. Subramanian
knowingly and fraudulently lied under oath at his Rule 2004
Deposition when "he claimed that he did not know what the
'Corporate' indication meant in an STI accounts receivable
aging." (Compl., at ¶ 57; Vol. II, at 81-82.)  The appellees
claim that at a "judgment enforcement" deposition on July 25,
2002 — approximately 2 years before his Rule 2004 Deposition — in
connection with an action brought in the Southern District of New
York, Mr. Subramanian provided a "concise explanation regarding
what the 'Corporate' indication meant." (Compl., at ¶ 57 & Ex.
P, at 83.)

(4)   Count XVI

The appellees allege that Mr. Subramanian knowingly and
fraudulently lied under oath regarding Uday Shankar Balakrishna
("Balakrishna"). (Compl., at ¶ 60.)  At his Rule 2004
Deposition, Mr. Subramanian testified that Balakrishna was hired
as an accountant by the accounting group at SLT. (Vol. I, at
182-83.)  Mr. Subramanian did not know when the accounting group
hired Balakrishna because he "d[idn't] hire people." (Id. at
183.)  He also stated that Balakrishna did not have any other
involvement or relationship with any other Silverline entity.

---

Bank of India PFS showing that they had an additional 8 life
insurance policies totaling $101,000,000. (Bank of India PFS, at
4.)

(Vol. II, at 164.)   However, the appellees attached a copy of an
"account profile from Washington Mutual Bank regarding a bank
account of Silverline Holding Corp. ("SHC"), an entity in which
[Mr.] Subramanian is an insider, . . . indicat[ing] that
[Balakrishna] is a signator."  (Compl., at ¶ 60 & Ex. P.)  Also,
the appellees allege that Mr. Subramanian stated during his
judgment enforcement deposition that he personally hired
Balakrishna for his job at STI.  (Id. at ¶ 60.)[14]

(5)  Count XXII

The appellees allege that the appellants failed to obey a
lawful order of the Bankruptcy Court and concealed their
property.  (Compl., at ¶ 68.)  The Bankruptcy Court ordered the
appellants to turn over Mrs. Subramanian's 1999 BMW (the
"Turnover Order") within 24 hours of the date of the entry of the
order — August 17, 2004 — by delivering it to Frost's office.
(Bankr. No. 04-10510, dkt. entry no. 74.)  The appellees allege
that as of the date of the complaint, the appellants had not
turned over the BMW to Frost despite receiving notice of the
Turnover Order.  (Compl., at ¶ 68.)

The appellees also claimed that the appellants "within one
year before the Petition Date or during the . . . bankruptcy

---

[14] The appellees did not attach the pages of the judgment
enforcement deposition where Mr. Subramanian allegedly made this
statement — pages 259 to 260 — to the complaint.  (See Compl., at
Ex. E.)

case, with the intent to hinder, delay or defraud creditors of the SHC bankruptcy case (. . . a case concerning an insider to Mr. Subramanian), transferred the BMW into Mrs. Subramanian's name." (Id. at ¶ 69; Rule 341 Meeting Transcr., at 79-80.) The appellees point out that SHC, which filed for chapter 11 bankruptcy protection on or about April 1, 2003, originally owned the BMW. (Compl., at ¶ 69; Rule 341 Meeting Transcr., at 80.) In 2003, the appellants transferred the BMW from SHC to Mrs. Subramanian. (Rule 341 Meeting Transcr., at 79-80.) Although a BMW dealer valued the BMW at less than $11,000, Mrs. Subramanian received the BMW for "very little," and possibly less than $2,000. (Compl., at ¶ 69; 7-20-04 Transcr. of Mrs. Subramanian's Rule 2004 Dep., at 15-16.) Also, the appellants listed the value of the BMW as $15,000 on their Schedules.

### (6) Count XXIII

The appellees allege, inter alia, that Mr. Subramanian knowingly and fraudulently "lied on the bankruptcy schedules or statement of financial affairs of the STI bankruptcy case (a case concerning an insider to Mr. Subramanian)." (Compl., at ¶ 70.)[15] At Mr. Subramanian's Rule 2004 Deposition, he stated that an entity, Expo 24-7, was a subsidiary of STI. (Id.; Vol. II, at

---

[15] The appellees claim that (1) Mr. Subramanian is an insider to STI "by virtue of his President, CEO, or Chairman Titles," and (2) STI is an insider to Mr. Subramanian. (Compl., at ¶ 70.)

146-48.)  The appellees assert that Mr. Subramanian failed to include STI's interests in Expo 24-7 in its bankruptcy schedules. (Compl., at ¶ 70 & Ex. AA.)

(7)  Count XXIII (sic)

The appellees allege — similar to the previous count — that, <u>inter alia</u>, Mr. Subramanian knowingly and fraudulently "lied on the bankruptcy schedules or statement of financial affairs of the STI bankruptcy case (a case concerning an insider to Mr. Subramanian)."  (Compl., at ¶ 73.)  At Mr. Subramanian's Rule 2004 Deposition, he stated that an entity, Unified Herbal LTD, was a subsidiary of STI.  (<u>Id.</u>; Vol. II, at 146-48.)  The appellees assert that Mr. Subramanian failed to include STI's interests in Unified Herbal in its bankruptcy schedules. (Compl., at ¶ 73 & Ex. AA.)

The appellees also allege that Mr. Subramanian published a materially false statement respecting STI's financial condition, on which HSBC reasonably relied.  (<u>Id.</u> at ¶ 76.)  Mr. Subramanian allegedly signed "borrowing base certificates reflecting that STI had full rights to collect the Unified Herbal receivables." (<u>Id.</u>)  Instead, Mr. Subramanian testified during his Rule 2004 Deposition that STL would complete work for Unified Herbal, but STI would collect on any invoices, keep 20%, and send the remainder to STL.  (<u>Id.</u>; Vol. I, at 191-94; Vol. II, at 33-35.) Mr. Subramanian also stated that on STI's books and records, the

22

accounts receivable reflected 100% of the invoice.  (Compl., at ¶ 76; Vol. I, at 194.)  As such, the appellees alleged that Mr. Subramanian knowingly published a materially false statement and "willfully and maliciously injured HSBC and collateral of HSBC." (Compl., at ¶ 77.)

(8)  Count XXVI

The appellees allege that Mr. Subramanian published materially false statements respecting STI's financial condition, on which HSBC reasonably relied.  (Id. at ¶ 84.)  The appellees claim that Mr. Subramanian executed two (1) borrowing base certificates showing gross receivables for STI of approximately $71 million and $70 million in March and April 2002, respectively, and (2) affidavits showing gross receivables for STI of approximately $25-$36 million in June 2002.  (Id. at ¶ 84 & Exs. CC, DD, EE, & FF.)  Thus, the appellees contend that the borrowing base certificates were materially false, "as reflected by the drastically lower amount of receivables seen in the . . . affidavits."  (Id. at ¶ 84.)  They also assert that Mr. Subramanian made the false statements to, inter alia, induce HSBC to lend STI money.

The appellees also alleged that, in connection with the STI bankruptcy case, Mr. Subramanian "failed to satisfactorily explain the rapid drop in STI's receivables."  (Id. at 86.)  The appellees contend that Mr. Subramanian has "resisted or refused

23

to answer" the question as to why the receivables decreased from
approximately $71 or $70 million in March and April 2002 to
approximately $25-$36 million as of June 2002.  (See id. (citing
Vol. II, at 66-82.)

>           b.   The appellants' defenses

The appellants contend that they asserted "four specific
defenses" in Mr. Subramanian's Certification.  (Appellants Br.,
at 15.)  First, the appellants point to Mr. Swidler only spending
one hour with them — despite the "size and complexity" of the
bankruptcy — preparing the bankruptcy petition.  (Id. at 15-16;
Subramanian Cert., at ¶ 24.)  Also, they contend that he did not
properly explain each of the various questions.  (Appellants Br.,
at 16; Subramanian Cert., at ¶ 24.)  Thus, the appellants argue
that "[t]he circumstances involving the preparation of the
petition and the resulting discrepancies between the petition and
the [Rule 341 and Rule 2004] depositions . . . is highly
pertinent to the issue of knowingly and fraudulently lying under
oath."  (Appellants Br., at 16; Subramanian Cert., at ¶ 24.)

The appellants also argue that they responded to each
"category" of allegations.  (Appellants Br., at 17.)  Third, the
appellants "informed the Bankruptcy Court that they were seeking
leave to file an amended answer to properly respond to each of
the plaintiffs' 199 allegations."  (Id.)  Finally, the appellants
"intended to file an amended bankruptcy petition to address any
discrepancies."  (Id.; Subramanian Cert., at ¶ 28.)

c.   The Bankruptcy Court's Decision

We conclude that the Bankruptcy Court did not err in ruling that the appellants failed to provide a complete defense to the allegations in the complaint.  Mr. Subramanian's Certification failed to respond at all to Counts V, XII, XIII, and XVI of the complaint.  Regarding Count VII, Mr. Subramanian was "not sure what kind of explanation [is] require[d]" to address the discrepancies between the appellants' statements about Mrs. Subramanian's job and job title while working at eCom.  Also, he stated that the discrepancies between his testimony at the Rule 2004 Deposition and the Rule 341 Meeting were his belief that at the Rule 341 Meeting he was talking about not knowing the current ownership of eCom, and at the Rule 2004 Deposition, he was explaining his past relationship with eCom.  However, Mr. Subramanian failed to respond to the allegation that the appellants channeled money from eCom for their personal expenses, such as the check from eCom to Mrs. Subramanian for "House Rent-Feb."  Furthermore, although the appellants did address their failure to turn over the BMW as alleged in Count XXII, they failed to respond to the claim that they fraudulently conveyed the vehicle.  The appellants also "made no response to the allegation [in Count XXIII (sic)] that Mr. Subramanian made false statements to HSBC with regard to the Unified Herbal invoice." (Rule 60(b) Ord., at 10.)  Finally, the appellants failed to

25

answer the allegations in Count XXVI that Mr. Subramanian executed several documents with HSBC in which he overstated STI's receivables.

The appellants contend that the Bankruptcy Court erred by reviewing each count in the complaint and analyzing whether the appellants had provided a defense to each count.  As such, the appellants argue that the Bankruptcy Court "conducted a trial on the basis of certifications filed in support of, and in response to, the [Rule 60(b)] motion."  (Appellants Br., at 17.)  The appellants further claim that the Bankruptcy Court's "minute examination of each of the 199 numbered allegation[s] was tantamount to a motion for summary judgment, made post discovery."  (Id. at 18.)  Their arguments are without merit.

The appellants were required to provide the Bankruptcy Court with specific facts supporting a meritorious defense, i.e., those that would constitute a complete defense to the action.  $55,518 in U.S. Currency, 728 F.2d at 195 (emphasis added).  As explained above, the appellants failed to assert any defense to four counts in the complaint, and did not completely respond to another five counts.  The appellants' general defenses of (1) attorney neglect in preparing the bankruptcy petition, and (2) their desire to file an (a) amended bankruptcy petition or (b) amended answer, do not address any of the nine counts that they — in whole or in part — failed to address.  These counts, if proven, would deny the appellants a discharge.

26

The appellees, for example, contend in Count V that the appellants failed to satisfactorily account for the loss of $20,000.  (Compl., at ¶ 33.)  The appellees allege that Mr. Subramanian's statement that he and his wife had "spent" the $20,000, without providing any records or further explanation as to how the money was "spent," warranted the denial of their discharge under 11 U.S.C. § 727(a)(5).  Section 727(a)(5) of the Bankruptcy Code states that a court will grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  Id.  Under section 727(a)(5),

> the plaintiff has the initial burden of identifying the assets in question by appropriate allegations in the complaint and showing that the debtor at one time had the assets but they are no longer available for the debtor's creditors.  The plaintiff must introduce more than merely an allegation that the debtor has failed to explain losses, e.g., the objector must produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets.  There is no requirement, however, that the plaintiff show that the debtor acted fraudulently or intentionally.

In re Park, 272 B.R. 323, 332 (Bankr. D.N.J. 2001) (internal citations and quotations omitted).

The determination of what constitutes a "satisfactory" explanation is a matter of discretion for the court.  In re Buzzelli, 246 B.R. 75, 117 (Bankr. W.D. Pa. 2000).  A defendant's explanation must "convince the judge" that the explanation is worthy of belief.  In re Chalik, 748 F.2d 616, 619 (11th Cir.

27

1984).  Explanations of a generalized, vague, indefinite nature such as assets being spent on "living expenses," unsupported by documentation, are unsatisfactory.  In re Carter, 236 B.R. 173, 180-81 (Bankr. E.D. Pa. 1999).

The appellees attached to their complaint a sufficient factual foundation to support the allegation that the appellants owned the particular assets mentioned, i.e., $20,000, at one time, but that those assets are no longer available to the appellants' creditors, including HSBC.  Accordingly, the Bankruptcy Court did not err in (1) finding that the appellants had failed to assert a meritorious defense to, inter alia, Count V of the complaint, (2) entering a default judgment against the appellants, and (3) denying their right to a discharge.

### C.  Appellants' Rule 60(b)(6) Motion

The appellants claim that the Bankruptcy Court erred in determining that they were not entitled to relief under Rule 60(b)(6) for the gross negligence of their bankruptcy counsel, Swidler.  (Appellants Br., at 21.)  The appellants argue that (1) the Bankruptcy Court failed to consider their Rule 60(b)(6) motion, and (2) they demonstrated that Swidler was grossly negligent in failing to file (a) a timely answer, (b) a motion to vacate the entry of default, (c) a response to the motion for default judgment, and (d) a proper Rule 60(b) motion for relief. (Id. at 21-26.)  The appellees claim that the appellants were not permitted to seek relief under Rule 60(b)(6) because they

28

asserted grounds for relief under Rule 60(b)(1).  (Frost Br., at 25-27; HSBC Br., at 31-34.)

       1.   Rule 60(b)(6)

Rule 60(b)(6) permits a court to "relieve a party from a final judgment, order or proceeding for any . . . reason justifying relief from the operation of the judgment." <u>Id.</u> Thus, Rule 60(b)(6) relief cannot be based upon any reason which the court could have considered under Rule 60(b)(1).  <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 393 (1993).  Further, this relief is "extraordinary relief and may only be invoked upon a showing of exceptional circumstances." <u>Coltec. Indus. v. Hobgood</u>, 280 F.3d 262, 273 (3d Cir. 2002); <u>Boughner v. Sec. of Health, Ed. & Welfare</u>, 572 F.2d 976, 978 (3d Cir. 1978).  A party seeking relief under the Rule has the burden of showing that without such relief, an extreme and unexpected hardship would result.  <u>Boughner</u>, 572 F.2d at 978 (citation omitted).

       2.   The Bankruptcy Court's consideration of the Rule 60(b)(6) motion

The appellants first contend that the Bankruptcy Court failed to consider their Rule 60(b)(6) motion.  The appellants claim that "[al]though the Bankruptcy Court recited the fact that an attorney's conduct can be grounds for relief under [Rule 60](b)(6), no analysis was made of this point."  (Appellants Br., at 21.)  The appellants' argument is without merit.

The Bankruptcy Court noted that the appellants moved for relief under Rule 60(b)(1) and (b)(6).  (Rule 60(b) Order, at 6.) The Bankruptcy Court also explained that the appellants were moving for relief under Rule 60(b)(6) because they claimed that Swidler's conduct in filing late documents amounted to "exceptional circumstances" warranting relief.  (Id.)  However, the Bankruptcy Court found that because the appellants (1) did not allege improper service of process, and (2) received notice of the proceedings and filing dates separate and apart from the notices received by Swidler, they were not blameless for Swidler's late filings.  (Id.)  As such, the Bankruptcy Court concluded that the appellants could not seek relief under Rule 60(b)(6).  (Id.)  Therefore, contrary to the appellants' contention, the Bankruptcy Court fully considered their Rule 60(b)(6) motion.

3.    The appellants failed to demonstrate that they were faultless in the delay.

Under Rule 60(b)(6), a party may seek relief if the party's attorney displayed "neglect so gross that it is inexcusable." Boughner, 572 F.2d at 978.  To justify relief under subsection (6), however, a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay.  Pioneer, 507 U.S. at 393.[16]

---

[16] See, e.g., Thorpe v. Luisi, No. 00-3144, 2005 WL 1863671, at *3 (S.D.N.Y. Aug. 4, 2005) (stating "gross negligence of

The Bankruptcy Court did not analyze whether Swidler's conduct in failing to file (1) a timely answer, (2) a motion to vacate the entry of default, and (3) a response to the motion for default judgment, constituted "gross negligence."  Instead, the Bankruptcy Court determined that the appellants were not blameless for Swidler's delay.  The record demonstrates that the appellants were served, separate and apart from Swidler, a copy of the motion for entry of default and the motion for default judgment.  The appellants have not asserted that they (1) attempted to learn the status of their case, including (a) whether their answer was timely filed, or (b) whether Swidler opposed the entry of default or motion for default judgment, or (2) discussed with Swidler the entry of default judgment.  The appellants have also not claimed that Swidler misrepresented to them the status of their case.  See, e.g., Nair v. Colubus St. Cmty. Col., No. 02-595, 2006 WL 13233, at *2 (S.D. Ohio Jan. 3, 2006) (explaining that the client repeatedly attempted to learn the status of her case, and the attorney either "failed to respond, or misrepresented the status of the case").  Accordingly, the Bankruptcy Court did not err in finding that the appellants were not blameless for Swidler's late filings.

---

attorneys has occasionally served as grounds for relief from judgment under Rule 60(b)(6)," however, gross negligence of an attorney will be imputed to clients barring evidence of "diligent efforts by [the clients] to induce him to fulfill his duty").

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, concludes that the appellants have failed to demonstrate that the Bankruptcy Court erred in denying their motion for relief under Rule 60(b)(1) & (b)(6).  The appellants have failed to show that the Bankruptcy Court erred in finding that they had not asserted a meritorious defense — in whole or in part — to nine counts of the complaint. Further, the appellants failed to demonstrate that the Bankruptcy Court erred in finding that they were not blameless in their counsel's delay in filing an answer, failing to vacate the entry of default, or failing to oppose the motion for default judgment. The Court will issue an appropriate order.


                                    s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge